IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Michael McKnight, | ) | Civil Action No.: 8:09-3015-MBS-BHH |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| SCDC Director Jon Ozmint, Warden Gregory Knowlin, Linda Bradshaw, and Sgt. D. Jones, | ) | |
| Defendants. | ) | |

The Plaintiff, a prisoner proceeding pro se, brought this action alleging constitutional violations pursuant to 42 U.S.C. § 1983. The matter is before the Court on the Defendants' Motion for Summary Judgment. (Dkt. # 19.)

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on November 17, 2009, seeking damages for alleged civil rights violations.[1] On April 8, 2010, the Defendants filed a motion for summary judgment. By order dated April 9, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 18,

---

[1]There is not a prison mailroom stamp on the envelope containing the complaint. *Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to prison officials for forwarding to court). (Pet. Attach. #1.) Therefore, the undersigned is using the postmark date as the filing date.

2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion.

**FACTS**

At the time he filed this Complaint, the pro se Plaintiff was an inmate at the Turbeville Correctional Institution ("TCI").[2] In his Complaint, the Plaintiff alleges that while at TCI, on December 19, 2008, between 3:30 and 4:00 p.m., he was in his cell when the Defendant Sgt. Jones told him that he was "deadlocked" because a female officer had accused the Plaintiff of masturbating in front of her. (Compl. at 3.) He also said that Sgt. Jones told him the warden had a video of the Plaintiff "throwing up gang signs" while returning from the cafeteria. *Id.* The Plaintiff states that he and Sgt. Jones "had words." *Id.* He alleges that Sgt. Jones then entered his cell and choked him. *Id.* The Plaintiff alleges that he was then restrained and kneed twice in the side. (Compl. at 4.) He states he was gassed and then placed in handcuffs. *Id.* Finally, he alleges that he was burning, apparently from the mace, but the water was turned off in his cell and he was not taken for medical treatment until an hour and a half later. *Id.* The Plaintiff seeks actual damages for pain and suffering and "a letter of apology for all the harm that was caused to [him]." (Compl. at 5.)

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[2]The Plaintiff has since been released from prison. (*See* Dkt. # 15; *see also* Defs.' Mem. Supp. Summ. J. Mot. at 1.)

moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

# DISCUSSION

Liberally construing the Complaint, the Plaintiff alleges claims of excessive force and deliberate indifference to medical needs. (Compl. at 2.) The Defendants contend, inter alia, that the Plaintiff did not exhaust his administrative remedies and has failed to state a claim. The undersigned agrees.

**Exhaustion of Administrative Remedies**

The Defendants contend that this action should be dismissed as the Plaintiff failed to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006), the Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* at 90. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Id.*

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

Here, the record shows the Plaintiff filed a Step 1 grievance regarding this incident. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 7 - Step One Grievance.) However, the record also undisputably shows that this grievance was withdrawn. *Id.* Therefore, the Plaintiff did not exhaust his administrative remedies. In any event, even if the Plaintiff had exhausted his administrative remedies, the Plaintiff's claims still fail as discussed below.

***Excessive Force Claims***

The Plaintiff alleges that the Defendant Jones used excessive force against him violating his constitutional rights. The Eighth Amendment generally prohibits the use of unnecessary and wanton force on inmates. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Whether a particular use of force violates this proscription depends on both subjective and objective considerations. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1991). "Specifically,

Eighth Amendment analysis necessitates inquiry as to whether a prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). In the context of an alleged use of excessive force, whether the prison official acted with a sufficiently culpable state of mind "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992))(*quoting Whitley v. Albers*, 475 U.S. at 320-21).

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (*quoting Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

The objective component requires this Court to determine "if the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation." *Hudson,* 503 U.S. at 8 (*quoting Wilson*, 501 U.S. at 298, 303). The Defendants rely on *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994), for the proposition that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis. " (Defs.' Mem. Supp. Summ. J. Mot. at 10.) However, the Supreme Court, recently rejected the de minimis threshold set forth in *Norman. Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, ___ L.Ed.2d ___ (2010). In *Wilkins,* the Court held that the level of force used determines whether an inmate's constitutional rights were

6

violated, not the injury sustained. *Id.*

Appropriate force may be used by prison officials when it is intended to maintain discipline within a prison institution or to restore order. *Hudson,* 503 U.S. at 6. However, this "is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9 (*citing Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). When an inmate claims prison officials used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component." *Williams*, 77 F.3d at 761. In order to conclude that Plaintiff's due process rights were violated, "it is necessary to find that the officer's actions amounted to punishment and were not merely 'an incident of some other legitimate government purpose. . . .'" *Robles v. Prince George's County, Md.,* 302 F.3d 262, 269 (4th Cir. 2002) (*quoting Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).

In his Complaint and in his response to the Defendants' Summary Judgment Motion, the Plaintiff does not contradict the Defendants' assertions that the Plaintiff was failing to follow directives. (Compl. and Pl.'s Mem. Opp. Summ. J. Mot. at 1.)[3] He states that the Defendant Jones kneed him twice and then maced him in an effort to restrain him (*Id.*), and the record shows that he was seen by medical staff and exhibited only redness in his eyes without tearing. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 5.)

Furthermore, the record indicates that the Defendant Jones acted for legitimate

---

[3]The Incident Report notes that the Plaintiff was to be charged with refusing to obey a directive. (Defs.' Mem. Supp Summ. J. Mot. Attach. # 3 -Report on Use of Force.) The Plaintiff has not established that he was not convicted or any conviction was overturned or reversed. Thus, *Heck v. Humphrey,* 512 U.S. 477 (1994), may also bar any § 1983 claim the Plaintiff may be alleging regarding this incident.

7

"correctional purposes" and "in good faith," which clearly supports a finding that she did not act with malicious or sadistic intent. The evidence, viewed in a light most favorable to the Plaintiff, does not support an inference that Jones acted maliciously and sadistically with the intent to cause harm. *Whitley,* 475 U.S. at 320-21. Thus, the Plaintiff fails to illustrate that the force was not applied "in a good faith effort to maintain or restore discipline." *Whitley,* 475 U.S. at. 320-21; *see also Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (finding no excessive force if amount of force commensurate with need therefor). The undersigned also notes that the record shows that the Defendant Jones deployed three grams of Top Cop. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 - Incident Report.) Three grams is considered a small amount of chemical agent and demonstrates Jones' restraint and negates an inference that he acted vindictively or with an intent to harm the Plaintiff. *See Townsend v. Anthony*, 2006 WL 2076920 (D.S.C. 2006) (finding 20 grams to be a small amount) (unpublished). Accordingly, the Plaintiff's excessive force claims should be dismissed.

**Deliberate Indifference to Medical Needs**

The Plaintiff also alleges a claim of medical indifference based upon his allegations that he was not taken for medical treatment for an hour and a half after being maced. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials

have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Assuming the Plaintiff's allegations are true and that he was not seen by medical personnel for an hour and a half after the macing, at most, there was a delay in treating the plaintiff. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or

permanent loss.'" *Coppage v. Mann,* 906 F.Supp. at 1037. The Plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss. Accordingly, this claim should be dismissed.

**Claims Based on Respondeat Superior**

The Plaintiff alleges several claims based upon the theory of respondeat superior. However, there is no respondeat superior liability pursuant to 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Even liberally construing the Plaintiff's claims based upon the theory of respondeat superior as claims alleging supervisory liability, these claims fail.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier,* 896 F.2d at 854 (citation omitted). A plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir. 1991); *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984). A plaintiff must generally produce evidence that the conduct complained of is prevalent or has been repeated on several occasions, and that the supervisor has refused to act "in the face of documented widespread abuses." *Id*. at 373.[4]

---

[4]Recently, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). The dissent in *Iqbal* opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." *Id.* at 1957

The Plaintiff has failed to show that he faced an unreasonable risk of harm from being maced. As noted above, pepper spray, or mace, may be used to control recalcitrant inmates. *Williams v. Benjamin,* 77 F.3d 756, 763 (4th Cir. 1996). Further, as discussed above, there is no evidence that any of the defendants used excessive force or were indifferent to the Plaintiff's medical needs. Put another way, there is no evidence that a constitutional injury occurred which is a prerequisite to supervisory liability claims. Accordingly, there can be no liability on a supervisor liability basis.

**Qualified Immunity**

The Defendants also raise the defense of qualified immunity. Qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott,* 156 F.3d 563, 567(4th Cir.1998) (when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

**State Law Claims**

To the extent that the Plaintiff states additional claims under state law against the Defendants, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the Plaintiff's federal claims

---

(Souter, J., dissenting).

against the Defendants as set forth above. *See* 28 U.S.C. § 1367(c).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendant's Motion for Summary Judgment (Dkt. # 19) be GRANTED and the Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

                                                        s/Bruce Howe Hendricks
                                                        United States Magistrate Judge

July 13, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**